J-A06023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IRA H. WEINSTOCK, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RONALD T. TOMASKO, JULIE A. KORANDA, AS ADMINISTRATRIX OF THE ESTATE OF MICHAEL A. KORANDA, AND TOMASKO AND KORANDA, P.C. | |
| Appellees | No. 1177 MDA 2015 |

Appeal from the Order Entered June 19, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2000-CV-2292

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 26, 2016**

Ira H. Weinstock, P.C. ("Weinstock"), appeals from the order entered in the Court of Common Pleas of Dauphin County denying Weinstock's petition to strike judgment of *non pros* or, alternatively, petition to open entry of judgment of *non pros*.  Upon careful review, we affirm.

This matter arises from two actions initiated by Weinstock in 1997 and 2000, which were subsequently consolidated upon Weinstock's motion in June 2005.  Weinstock filed an amended complaint, incorporating the claims from the two original actions, on August 1, 2005.[1]  Specifically, Weinstock

---

[1] Appellees filed preliminary objections to this complaint, which were denied on December 29, 2006.

J-A06023-16

alleged that Ronald Tomasko and Michael Koranda, employees of the Weinstock law firm working as associate attorneys, wrongfully induced numerous clients to sever their relationships with Weinstock and retain Appellees as counsel after Appellees left to form their own firm, Tomasko and Koranda, P.C.[2]

The trial court set forth the relevant procedural history as follows:

Defendants filed a notice of death of Michael A. Koranda on January 15, 2007, and subsequently moved to substitute the administratrix of his estate as a Defendant. On January 25, 2007, Defendants filed an Answer with New Matter and Counterclaim. Plaintiff filed a Reply to New Matter and Answer to Counterclaim on March 28, 2007. On May 18, 2007, Defendants filed a Reply to Plaintiff's new matter on the counterclaim. There was no meaningful docket activity from that date until June 6, 2012, when a second[3] Notice of Proposed Intention to Terminate Court Case due to lack of docket activity was issued by the court.

On August 1, 2012, Plaintiff filed its Statement of Intention to Proceed. The [c]ourt issued an [o]rder on September 6, 2012, requiring the parties to discuss timelines to move [the] case forward. The parties filed a Joint Status Report on October 12, 2012, stating that their discovery plan would take approximately ninety (90) days to complete. Once discovery was completed, the parties would file dispositive motions if necessary. Defendants filed a motion to extend time for discovery, which was granted on December 17, 2012. By that [o]rder, discovery

_____

[2] The consolidated amended complaint contained counts of interference with contract, breach of fiduciary duty, unjust enrichment, quantum meruit, defamation, and a request for an accounting of all monies "received on behalf of or from individuals and entities who were formerly clients of Ira H. Weinstock, P.C." Amended Complaint, 8/1/05, at ¶ 167.

[3] The trial court had previously issued a notice of proposed termination due to inactivity with respect to the second action filed by Weinstock in 2000.

was due to be completed on or before February 13, 2013, with dispositive motions due on or before March 15, 2013.

On March 15, 2013, Defendants filed a Motion for Judgment of *Non Pros* and, in the Alternative, for Summary Judgment, and brief in support thereof. Plaintiff filed its Answer and brief in opposition thereto on April 15, 2013. Defendants were granted leave to file a reply brief, which was filed on May 6, 2013. On January 30, 2014, Defendants filed a Certificate of Readiness for the motion.

This [c]ourt heard oral argument on Defendants' [m]otion on March 13, 2014. On April 4, 2014, this [c]ourt issued an [o]rder granting Defendants' [m]otion, and directing the Prothonotary to enter a Judgment of *Non Pros* against Plaintiff for the following reasons: (1) Plaintiff has shown a want of due diligence in failing to proceed with reasonable promptitude; (2) there was no compelling reason for the delay; and (3) the delay has caused prejudice to the Defendants in their ability to defend against the action.

Plaintiff filed an appeal on May 2, 2014, but subsequently withdrew and discontinued the appeal. On July 3, 2014, Plaintiff filed a Petition to Strike Judgment of *Non Pros,* or Alternatively, Petition to Open Judgment of *Non Pros*. Both parties filed briefs as well as supplemental briefs following the status conference on September 29, 2014. [The court entered an order denying Plaintiff's petition to strike or open on June 19, 2015.]

Trial Court Opinion, 6/19/15, at 3-4 (internal footnotes omitted).

This timely appeal follows, in which Weinstock raises the following issues for our review:

1. Whether the trial court erred and abused its discretion in its application of [Pa.R.C.P.] 3051 in denying [Weinstock's] petition to strike judgment of *non pros*[.]

2. Whether the trial court erred and abused its discretion in granting Appellees' [motion for judgment of *non pros*] and denying [Weinstock's] petition based upon a period of alleged inactivity already assessed and remedied by another judge of the same court[.]

- 3 -

3.   Whether the trial court erred and abused its discretion in failing to find that Appellees waived or did not preserve any right to request a judgment of *non pros* where Appellees had unclean hands and failed to raise or maintain the issue at the earliest or any other appropriate time.

Brief of Appellant, at 4.

We begin by noting that any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike. **Bartolomeo v. Marshall**, 69 A.3d 610, 613-14 (Pa. Super. 2013) (citation omitted). An order denying a petition to open a judgment of *non pros*, while not disposing of all parties and all claims, is an interlocutory order immediately appealable as of right. **Smith v. Friends Hosp.**, 928 A.2d 1072, 1074 (Pa. Super. 2007).

A trial court's decision to deny a petition to open or strike a judgment of *non pros* is scrutinized under the abuse of discretion standard of appellate review. **Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 382 (Pa. Super. 2011), citing **Parkway Corp. v. Margolis Edelstein**, 861 A.2d 264, 265 (Pa. Super. 2004). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. **Dibish v. Ameriprise Fin., Inc.**, 134 A.3d 1079, 1095 (Pa. Super. 2016).

To dismiss a case for inactivity pursuant to a defendant's motion for *non pros*, there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the

plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant. ***Jacobs v. Halloran***, 710 A.2d 1098, 1103 (Pa. 1998).

A request to open a judgment of *non pros*,[4] like the opening of a default judgment, is in the nature of an appeal to the equitable powers of

_____

[4] Rule of Civil Procedure 3051 governs relief from a judgment of *non pros* and provides, in relevant part, as follows:

> (a) Relief from a judgment of *non pros* shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.
>
> . . .
>
> (c) If the relief sought includes the opening of the judgment of *non pros* for inactivity, the petition shall allege facts showing that
>
> > (1) the petition is timely filed,
> >
> > (2) there is a meritorious cause of action, and
> >
> > (3) the record of the proceedings granting the judgment of *non pros* does not support a finding that the following requirements for entry of a judgment of *non pros* for inactivity have been satisfied:
> >
> > > (i) there has been a lack of due diligence on the part of the plaintiff for failure to proceed with reasonable promptitude,
> > >
> > > (ii) the plaintiff has failed to show a compelling reason for the delay, and
> > >
> > > (iii) the delay has caused actual prejudice to the defendant.

Pa.R.C.P. 3051.

the court and, in order for the judgment of *non pros* to be opened, a three-pronged test must be satisfied: (1) the petition to open must be promptly filed; (2) the default or delay must be reasonably explained or excused; and (3) facts must be shown to exist that support a cause of action. ***Madrid***, 24 A.3d at 381; Pa.R.C.P. 3051.

Here, Weinstock initially argues that the trial court erred in its application of Rule 3051 in denying his petition to open. Specifically, Weinstock asserts that the record does not support a finding that the three prongs of subsection (c)(3), regarding the requirements for entry of judgment *non pros*, have been satisfied. First, Weinstock asserts that he did not demonstrate a lack of due diligence in prosecuting the case because his diligence "was frustrated by circumstances" involving his inability to obtain his file from his former counsel, Karen Coates, Esquire, who had left the private practice of law. Brief of Appellant, at 12. Second, Weinstock claims that, contrary to the trial court's finding, he did, in fact, offer compelling reasons for the delay. Specifically, Weinstock again cites to his difficulties in obtaining Attorney Coates' file, as well as extensive litigation in federal court regarding "many issues similar to those asserted by the Appellees in this case." ***Id.*** at 13. Finally, Weinstock claims that Appellees did not suffer actual prejudice because the death of defendant Michael Koranda, which both Appellees and the court cite as prejudicial to Appellees' ability to defend themselves, actually occurred prior to the period of inactivity. Weinstock also asserts that Appellees did not demonstrate actual prejudice resulting

from the absence and/or death of several clients. This claim is without merit.

Initially, Weinstock's argument regarding due diligence is unavailing. Although he asserts that he was unable to obtain his file from Attorney Coates, Weinstock neglects to note that he, himself, had been signing pleadings since January 2005, over two years before the period of inactivity began. Indeed, it appears that Attorney Coates never appeared on a distribution list for any court order in this matter after June 2006, having been replaced by Weinstock himself. Because Weinstock had essentially taken over his own representation more than two years prior to the period of inactivity, it defies credulity that he would nevertheless assign blame for the inaction to an attorney who had not had an active role in the litigation for an extended period of time. Accordingly, the court did not err in finding that Weinstock did not satisfy the due diligence prong of the inquiry. *See Metz Contracting, Inc. v. Riverwood Builders, Inc.*, 520 A.2d 891, 894 (Pa. Super. 1987) (mere neglect or inadvertence of counsel to proceed over period of three years is inadequate to signify good cause for reinstatement).

Weinstock's claim that the court erred in failing to find he established compelling reasons for the delay is similarly without merit. In addition to blaming prior counsel, Weinstock asserts that allegedly-related "extensive litigation" in other fora hindered his ability to proceed with the instant matter. However, Weinstock has provided no proof, other than a bald claim, that the other cases involving the Appellees prevented him from pursuing his

claims in this matter. Nor has he provided any legal support for the idea that docket activity from unrelated actions may compensate for lack of activity in another case so as to successfully forestall a judgment of *non pros* in the latter. Accordingly, the trial court did not err in concluding that Weinstock did not show a compelling reason for the delay.

Finally, Weinstock has not demonstrated that the trial court committed an abuse of discretion in finding that the Appellees had been prejudiced by the period of inactivity. In its opinion, the court concluded that the totality of the circumstances, including the deaths of Michael Koranda and witness Richard Weschitz, the advanced age of some witnesses, and the inability to locate numerous other witnesses, supported a finding of actual prejudice. Although, as Weinstock notes, Koranda's passing occurred prior to the period of inactivity, the effect of his death was exacerbated by the death and/or disappearance of other witnesses. For example, the trial court notes that five of the sixteen clients identified by Weinstock as having been lured away by the Appellees were "represented by and interacted solely with" Koranda. Trial Court Opinion, at 11. Koranda's absence deprives the Appellees of potentially relevant information regarding these individuals. Given our deferential standard of review, **see Dibish**, **supra**, we cannot say that the trial court abused its discretion in finding that the Appellees suffered a "substantial diminution" of their ability to present their case at trial and, consequently, denying relief to Weinstock.

Weinstock's final two claims are related and are based on the following series of events that transpired in 2012. On June 6, 2012, the court, by the Honorable Lawrence F. Clark, Jr., issued an administrative notice of proposed termination of court case due to a lack of docket activity in the matter for at least two years. The order stated that the case would be terminated unless a statement of intention to proceed was filed within two months, or by August 2, 2012. On August 1, 2012, Jason M. Weinstock, Esquire, on behalf of Ira H. Weinstock, P.C., filed a statement of intention to proceed. Thereafter, on September 6, 2012, the court issued another order, directing the parties to "confer and discuss timelines necessary to move this case expeditiously forward to settlement, arbitration, trial or other disposition." Trial Court Order, 9/6/12. The parties submitted a joint status report on October 12, 2012 and, on October 15, 2012, the court issued a case management order setting forth discovery and other deadlines. On December 14, 2012, after taking Weinstock's deposition, the Appellees filed a motion to extend the discovery deadline to enable them to depose Wendy Bowie, a former employee of Weinstock and a "crucial witness" in the case. Motion to Enlarge the Time for Discovery, 12/14/12, at ¶ 7. The court granted an enlargement of time by order dated December 17, 2012. On March 15, 2013, Appellees filed their motion for judgment of *non pros*.

Weinstock first asserts that, in issuing a judgment of *non pros*, the court "contradict[ed] and overrul[ed] the previous [o]rders from which no appeals were taken and regarding which no motions were filed." Brief of

Appellant, at 15. This argument appears to be an attempt to invoke the coordinate jurisdiction rule, pursuant to which judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). However, Weinstock neither explicitly invokes the rule nor cites any authority in support of his claim. We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review. *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005); Pa.R.A.P. 2119(b). Accordingly, we find this claim waived.

Weinstock also argues that the Appellees' compliance with the trial court's case management orders, by cooperating in the submission of a status report and seeking to enlarge the time for discovery, "rendered [their] hands unclean" by effectively signaling their acquiescence to moving forward with the case. Because a party seeking equitable relief, such as the entry of a judgment of *non pros*, must do so with clean hands, *Jacobs*, *supra*, Weinstock claims that the court erred in granting judgment of *non pros*. Weinstock is entitled to no relief.

The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue. *Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000), citing *Jacobs*, 710 A.2d at 1103. Application of the

doctrine is confined to willful misconduct which concerns the particular matter in litigation. ***Shapiro v. Shapiro***, 204 A.2d 266, 268 (Pa. 1964).

Here, there is no allegation of fraud, deceit or willful misconduct on the part of the Appellees. To the contrary, Weinstock bases his "unclean hands" claim on the Appellees' very compliance with the scheduling orders issued by the trial court.[5] Such an assertion not only defies logic, but must fail as a matter of law. ***See id.***; ***Terraciano***, ***supra***.

Order affirmed.

DUBOW, J., Joins the memorandum.

STABILE, J., Concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/26/2016</u>

---

[5] Weinstock also baldly states that "even from the events giving rise to this case, Appellees' hands were not clean." Brief of Appellant, at 16. This is apparently a reference to Weinstock's allegation that the Appellees "stole" clients from him. However, the claims forming the basis of Weinstock's complaint, which Appellees have denied, remain only unproven allegations. Accordingly, even if Weinstock had set forth a more fulsome argument than a single unsupported sentence, he would not be entitled to relief.